UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------
STERLING FOREST, LLC,

## 07 CIV. 3176

                    Plaintiff,

                                        COMPLAINT    **WP4"**

          -against-

THE VILLAGE OF TUXEDO PARK, THE VILLAGE
BOARD OF THE VILLAGE OF TUXEDO PARK,
DAVID C. McFADDEN, individually and in
his official capacity as Mayor of the
Village Of Tuxedo Park, CHRISTOPHER HANSEN,
Individually and in his official capacity
as a Village Trustee, OLIVER PARKER,
Individually and in his official capacity
as a Village Trustee, RUSSELL VERNON,
Individually and in his official capacity
as a Village Trustee, NANCY HAYS,
Individually and in her official capacity
as a Village Trustee, and RICHARD MORROW,
individually and in his official capacity
as Superintendent of Public Works of the
Village of Tuxedo Park,

                    Defendants.
-------------------------------------------------X

     Plaintiff, Sterling Forest, LLC, by its attorneys, DRAKE,

LOEB, HELLER, KENNEDY, GOGERTY, GABA & RODD, PLLC, as and for

its Complaint against the above-named Defendants, alleges as

follows:

### THE PARTIES

     1.   Plaintiff, Sterling Forest, LLC, (hereinafter

"Sterling Forest") is a Delaware limited liability corporation

duly authorized to conduct business in the State of New York and maintaining offices at 16 Sterling Lake Road, Tuxedo, New York.

2.    Defendant, Village of Tuxedo Park, is a municipal corporation maintaining offices at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

3.    Defendant, Village Board of the Village of Tuxedo Park, is the duly constituted Village Board of the Village of Tuxedo Park and maintains offices for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

4.    Defendant, David C. McFadden, is the duly elected Mayor of the Village of Tuxedo Park; he resides at Pepperridge Road, Tuxedo Park, New York and, as Mayor, he maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

5.    Defendant, Christopher Hansen, is a duly elected Village Trustee of the Village of Tuxedo Park; he resides at West Lake Road, Tuxedo Park, New York and, as a Village Trustee, he maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

SJG/    01095.49608    20960

6.    Defendant, Oliver Parker, is a duly elected Village Trustee of the Village of Tuxedo Park; he resides at 1 West Lake Drive, Tuxedo Park, New York and, as a Village Trustee, he maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

7.    Defendant, Russell Vernon, is a duly elected Village Trustee of the Village of Tuxedo Park; he resides at 194 East Lake Road, Tuxedo Park, New York and, as a Village Trustee, he maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

8.    Defendant, Nancy Hays, is a duly elected Village Trustee of the Village of Tuxedo Park; she resides at Cliff Road, Tuxedo Park, New York and, as a Village Trustee, she maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

9.    Defendant, Richard Morrow, is the Superintendent of Public Works of the Village of Tuxedo Park; he resides at 1 Library Road, Tuxedo Park, New York and, as Superintendent of Public Works, he maintains an office for the transaction of business at Village Hall, 80 Lorillard Road, Tuxedo Park, New York 10987.

## JURISDICTION AND VENUE

10.   This action is brought pursuant to 42 U.S.C. §1983 to redress violations by persons acting under color of state law of the plaintiff's rights as guaranteed to the plaintiff by the Fourth and Fifth Amendments of the United States Constitution as made applicable to the States by the Fourteenth Amendment.

11.   The Court has jurisdiction over the claims asserted in this action under 28 U.S.C. §1343(a)(3), (4) and §1331 as well as by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 and §1988.

12.   Venue is proper in the U.S. District Court, Southern District of New York, as all of the parties are residents of Orange County, New York, and all of the events that form the basis of this action occurred in Orange County, New York.

## THE FACTS

13.   Prior to 1953, the Tuxedo Water Company provided central water service to properties within portions of the Town of Tuxedo.

14.   One of the water mains of the Tuxedo Water Company was laid upon certain real property located on New York State Route 17 in the Town Of Tuxedo, New York and identified on the Tax Map

Section 9, Block 1, Lot 5.4 and Section 8, Block 1, Lot 14

(hereinafter "the Subject Property").

15.   Another water main of the Tuxedo Water Company was

laid in New York State Route 17 and runs along the boundary of

the Subject Property abutting Route 17.

16.   In 1953, the newly formed Village of Tuxedo Park

(hereinafter "the Village") petitioned the New York State Water

Power & Control Commission (hereinafter the "WPCC") to approve a

proposed sale of the Tuxedo Water Company to the Village.

17.   On September 16, 1953, the WPCC issued an Order

approving the proposed sale of the Tuxedo Water Company to the

Village subject to several conditions.

18.   One of the conditions imposed by the WPCC was that the

Village must continue to supply water to all present customers

of the Tuxedo Water Company located outside of the Village.

19.   Another condition imposed by the WPCC was that the

Village must make central water service available to such other

residences as might be constructed in the future on properties

located along the existing water mains outside of the Village.

20.   Under the terms of the WPCC Order, the Village was

legally bound and obligated to provide central water service to

the Subject Property.

21.  Tuxedo Lake is the primary water reservoir for the water system that the Village acquired from the Tuxedo Water Company.

22.  Tuxedo Lake is a very large reservoir, with a surface area of approximately 286 acres, and it contains sufficient water resources to supply central water service to an area much larger than the Village of Tuxedo Park.

23.  Prior to 1979, Tuxedo Lake was located in the Town of Tuxedo and abutted the boundary of the Village of Tuxedo Park.

24.  In 1979, the Village instituted proceedings under New York State General Municipal Law ("GML") Article 17 to annex Tuxedo Lake from the Town of Tuxedo into the Village.

25.  On July 11, 1979, the Town of Tuxedo (hereinafter "the Town") and the Village entered into an Intermunicipal Agreement under which the Town consented to the proposed annexation of land into the Village subject to certain terms and conditions.

26.  The Intermunicipal Agreement expressly provided that, as per the terms of the 1953 WPCC Order, the Village would be bound and obligated to provide central water service to certain properties located outside of the Village, including the Subject Property.

27.    Upon execution of the Intermunicipal Agreement, both the Village and the Town adopted resolutions under GML Article 17 approving the annexation of Tuxedo Lake to the Village subject to the terms and conditions set forth in the said Intermunicipal Agreement including, without limitation, the Village's obligation to provide central water service to the Subject Property.

28.    Under the terms and provisions of <u>both</u> the said Intermunicipal Agreement and annexation proceedings under GML Article 17, the Village was bound, both contractually and as a matter of state law, to provide central water service to the Subject Property.

29.    Further, the owners of the Subject Property, their heirs, successors and assigns were third-party beneficiaries of the said Intermunicipal Agreement between the Village and the Town.

30.    On numerous occasions the Village has provided central water service to properties outside of the Village under the terms and provisions of the 1953 WPCC Order, the Intermunicipal Agreement and the annexation proceedings under GML Article 17.

31.    Prior to 2003, plaintiff, Sterling Forest, acquired title to the Subject Property.

32.  On or about August 5, 2003, Sterling Forest submitted an application to the Town Planning Board seeking approval to develop the Subject Property as a 63 lot residential subdivision to be called "Sterling Place."

33.  Sterling Forest's subdivision plans proposed to provide central water service to the Subject Property from the Village as per the terms and provisions of the WPCC Order, the Intermunicipal Agreement and the resolutions adopted in the annexation proceedings under GML Article 17.

34.  On February 14, 2005, the Town of Tuxedo Planning Board granted preliminary subdivision approval for Sterling Forest's proposed development of the Subject Property.

35.  In order to obtain final subdivision approval from the Town Planning Board, Sterling Forest had to first obtain the Village's approval on Sterling Forest's request to hook-in to the Village's central water system.

36.  Since the Village was obligated to provide central water service to the Subject Property both as a matter of law and contractually, the Village's right and ability to review Sterling Forest's plans to hook-in to the central water system was a mere ministerial duty limited to determining that the

plans for connecting to the system were safe and adequate from an engineering perspective.

37. On May 12, 2005, Sterling Forest submitted to the Village a request for central water service for the Subject Property along with a plan for the proposed hook-in of water lines and other supporting documents.

38. The Village's Superintendent of Public Works, defendant Richard Morrow, acknowledged receipt of Sterling Forest's request and plans but, for several months the Village ignored Sterling Forest's request and submittal.

39. In or about October of 2005 Sterling Forest contacted the Village Board and inquired into the status of its request for approval of its plans to hook-in to the Village's central water system.

40. On October 19, 2005, the Village Board voted to "table" Sterling Forest's request so that the Village Attorney, James G. Sweeney, could provide the Village Board with "final legal clarification" regarding its obligation to provide central water service to the Subject Property.

41. On October 20, 2005, the Village Attorney sent the Village Board a formal opinion letter reciting the facts set forth above and informing the Village Board that the Village was

legally obligated and bound to provide central water service to the Subject Property.

42. At the November 16, 2005 meeting of the Village Board, the opinion letter from the Village Attorney was read into the record.

43. At the November 16, 2005 meeting of the Village Board, the Village Board discussed Sterling Forest's request to hook-in to the Village's water mains.

44. At the November 16, 2005 meeting of the Village Board, no engineering objections or other public health and safety concerns were raised regarding Sterling Forest's request to hook-in to the Village's water mains.

45. At the November 16, 2005 meeting of the Village Board, defendant Mayor David C. McFadden (hereinafter "Mayor McFadden") stated that he was not in favor of providing water service to the Subject Property because the water would be used for the proposed Sterling Place subdivision.

46. Notwithstanding his personal distaste for the proposed Sterling Place residential subdivision, on December 5, 2005, Mayor McFadden processed Sterling Forest's request to hook-in to the Village's water mains and allowed the plans to be submitted to the Orange County Department of Health for approval of the

proposed change in the Village's central water system as per the legal opinion rendered by the Village's attorney.

47.   Upon information and belief, in or about December of 2005 or shortly thereafter, defendants Mayor McFadden, Village Trustee Christopher Hanson, Village Trustee Oliver Parker, Village Trustee Russell Vernon and Village Trustee Nancy Hays entered into a conspiracy under which they planned to wrongfully deny Sterling Forest's request to hook-in to the Village's central water system as a means of coercing Sterling Forest into selling the Subject Property to the Village for use as a site for a new Village Hall and Department of Public Works building.

48.   Upon information and belief, the said conspiracy among the defendants also proposed to use the Village's wrongful denial of Sterling Forest's request to hook-in to the Village's central water system as a means of inflicting financial harm on Sterling Forest by impeding or preventing approval of the Sterling Place subdivision and depressing the market value of the Subject Property, thereby furthering the Village's wrongful efforts to coerce Sterling Forest into selling the Subject Property to the Village for a price below fair market value.

49.   In furtherance of the said conspiracy, at the December 21, 2005 meeting of the Village Board, defendant Village Trustee

Christopher Hanson gave a "power point" presentation regarding the Sterling Place subdivision at which he argued that the proposed development of the Subject Property would have a negative impact on the Village's taxes and quality of life.

50.   Upon information and belief, Trustee Hanson's said presentation to the Village Board was a sham, and its sole purpose was to provide a pretext for the Village Board to "reconsider" the processing of Sterling Forest's request to hook-in to the Village's water mains.

51.   Sterling Forest was not given notice that its proposed subdivision or request for central water service would be discussed at the Village Board's meeting of December 21, 2005.

52.   In furtherance of the said conspiracy, on January 12, 2006, Mayor McFadden issued an open letter to Village residents proposing to prevent the Sterling Place subdivision from going forward by having the Village purchase the Subject Property for use as the site of a new Village Hall and/or Department of Public Works building.

53.   Mayor McFadden's open letter reads, in pertinent part:

> It is clear that this residential development of 63 homes adjacent to Wee Wah will have a negative impact on our taxes and quality of life. More important, the project, which complied with Town zoning, is moving forward toward completion at a fast pace.

> Several Trustees, working behind the scenes, *may* be able to present the developer with an alternative, rather than selling the subdivision to a homebuilder. We are proposing that the developer sell the property to the Village instead.  As I said, by purchasing the land now, the Village has a unique opportunity to protect itself from a bad residential development.  In other words, control our own destiny.

54.  Sterling Forest was not copied on the open letter.

55.  At some point, defendant Richard Morrow joined Mayor McFadden and Village Trustees in the conspiracy to wrongfully deny central water service to the plaintiff as a means of coercing Sterling Forest to selling its property to the Village.

56.   In furtherance of the said conspiracy, defendant Richard Morrow provided the Village Board with a false statement that he had "concerns" over a water tower proposed to be erected upon the Subject Property as a pretext for denying the plaintiff's request to hook-in to the Village's central water system.

57.  At no time did defendant Richard Morrow communicate his alleged "concerns" to Sterling Forest or request any changes, additions or deletions to the hook-in plans.

58.  In point of fact, as was well known to defendant Richard Morrow, the hook-in plans submitted by Sterling Forest

complied with good and accepted engineering practice and did not present any public health and safety concerns.

59.   At the January 18, 2006 meeting of the Village Board, Mayor McFadden and the Village Trustees undertook further discussion and consideration of Sterling Forest's request to hook-in to the Village's water system.

60.   Sterling Forest was not advised that its request for approval of its plans to hook-in the central water system was on the agenda for the Village Board's meeting of January 18, 2006.

61.   In furtherance of the said conspiracy, at the January 18, 2006 meeting of the Village Board by Mayor McFadden and Village Trustees Oliver Parker, Nancy Hays and Russell Vernon voted to cease processing Sterling Forest's request and to withdraw the hook-in plans from the County Department of Health.

62.   The Village Board did not offer any explanation or justification for its vote regarding Sterling Forest's plans.

63.   When members of the public attending the Village Board's meeting asked the Village Trustees why they had refused to process Sterling Forest's application, Mayor McFadden responded only that it was necessary because there were "people working behind the scenes" on the matter.

64.  When members of the public pressed the Village Board for more information, the Mayor and the Village Trustees refused to identify the people "working behind the scenes" or to divulge what they were working on.

65.  After the Village Board voted to cease processing Sterling Forest's application, it did not advise Sterling Forest of its decision or the action taken at the January 18, 2006 meeting.

66.  In February of 2006, Mayor McFadden contacted Sterling Forest and arranged a meeting in New York City.

67.  At no time did the Mayor or anyone else from the Village inform Sterling Forest of the action taken by the Village Board at its meeting of January 18, 2006.

68.  On February 9, 2006, Mayor McFadden and others met with Sterling Forest in New York City and stated that the Village wished to purchase the Subject Property for use as a site for a new Village Hall and Department of Public Works building.

69.  The purchase price suggested by the Village was grossly inadequate, and millions of dollars below the fair market value of the Subject Property.

70.  Sterling Forest politely informed the Village's delegation that it could not accept its purchase offer and that, if the Village was so inclined, it could again look into purchasing the Subject Property when Sterling Forest put it on the market following grant of final subdivision approval by the Town Planning Board.

71.  Mayor McFadden responded by stating that the "Village will do everything in its power to prevent Sterling Place from ever being approved."

72.  On April 3, 2006, Mayor McFadden wrote to the Orange County Department of Health formally withdrawing the plans for hooking-in the Subject Property to the Village's central water system based upon the action taken by the Village Board at its meeting of January 18, 2006.

73.  On May 17, 2006, Sterling Forest commenced an Article 78 proceeding against the Village, the Village Board, Mayor McFadden and the Village Trustees in New York State Supreme Court, Orange County seeking an order directing the Village to process and approve Sterling Forest's request to hook-in to the Village's central water system.

74.  By Order dated August 30, 2006, the Court granted judgment to Sterling Forest, vacated the Village Board's

resolution refusing to process Sterling Forest's application,
declared that the Village was under a duty of law to provide
central water service to the Subject Property and directed the
Village to process and approve Sterling Forest's request for
approval of its hook-in plans.

75. The Village has filed a notice of appeal from the said
Judgment and, to date, has persisted in its refusal to process
and approve Sterling Forest's request for approval of its plans
to hook-in to the Village's central water system.

76. By reason of the Village's wrongful actions as set
forth above, Sterling Forest has incurred, and continues to
incur, money damages from, among others, additional and
increased operation costs, carrying costs on the property,
additional taxes and additional legal and engineering fees
totaling in excess of THREE MILLION DOLLARS ($3,000,000).

77. In addition, due to the delay in securing approval of
its plans to provide central water service to the Subject
Property caused by the Village's wrongful actions, Sterling
Forest may lose its preliminary subdivision approval or
otherwise be required to modify its subdivision plans, in which
case it will suffer a financial loss in excess of TWO MILLION
DOLLARS ($2,000,000).

## AS AND FOR A FIRST CAUSE OF ACTION
[Violation of Due Process]

78.   Plaintiff repeats and realleges the allegations set forth in the paragraphs of this complaint numbered "1" through "77" as if fully set forth herein at length.

79.   Plaintiff Sterling Forest had a protected property interest in its right to receive central water service for the Subject Property upon submission of appropriate hook-in plans to the Village.

80.   Plaintiff Sterling Forest submitted appropriate hook-in plans to the Village and there were no grounds whatsoever for denial of Sterling Forest's request to hook-in to the mains in the Village's central water system.

81.   The defendants infringed on Sterling Forest's protected property interest in an arbitrary and capricious manner by refusing to process and approve Sterling Forest's plans and otherwise denying Sterling Forest's request to hook-in to the water mains in the Village's central water system.

82.   The defendants' actions in infringing on Sterling Forest's protected property interest were egregious, outrageous and a gross abuse of government authority in that the defendants conspired to knowingly and intentionally use their wrongful

actions as a means of depressing the market value of the Subject Property for purposes of advancing the Village's efforts to coerce Sterling Forest into selling the Subject Property to the Village for use as a site for a new Village Hall and Department of Public Works building and otherwise inflicting financial harm on Sterling Forest.

83.  By reason of the foregoing, the defendants named herein did violate the plaintiff's right to Due Process as guaranteed by the Fifth Amendment and made applicable to the States by the Fourteenth Amendment.

84.  As a result of the said violation of the plaintiff's civil rights by defendants, the plaintiff has suffered financial loss and other damages and/or will suffer financial loss and other damages in excess of FIVE MILLION DOLLARS ($5,000,000).

85.  Pursuant to 42 U.S.C. §1983 the plaintiff is entitled to recover damages from the defendants, jointly and severally, for the financial loss sustained by reason of their wrongful actions.

86.  By reason of the intentional and malicious actions of the defendants, the plaintiff also requests an award of punitive damages against the individual defendants in the amount of FIVE MILLION DOLLARS ($5,000,000).

## AS AND FOR A SECOND CAUSE OF ACTION
[Violation of Equal Protection]

87.  Plaintiff repeats and realleges the allegations set forth in the paragraphs of this complaint numbered "1" through "86" as if fully set forth herein at length.

88.  The Village has historically provided central water service to properties located outside of its boundaries under the 1953 WPCC Order, the Intermunicipal Agreement and resolutions adopted in the Annexation proceedings, and the Village continues to do so at present.

89.  Upon information and belief, prior to 2005 the Village had received numerous requests for approval of plans to hook-in to the Village's central water system from owners of property located outside of the Village on which water mains of the Tuxedo Water Company have been laid or adjacent to lands upon which water mains of the Tuxedo Water Company have been laid. Upon information and belief, the property owners making such requests for approval of plans to hook-in to the Village's central water system included, but were not limited to, owners of property on Hospital Road, Nursery Road, Mountain Road, Augusta Place and Schoolhouse Road.

90.  Upon information and belief, the Village promptly
processed and approved all of the said requests for approval of
plans to hook-in to the Village's central water system in
accordance with the terms and provisions of WPCC Order and/or
the Intermunicipal Agreement with the Town and the provisions of
the resolutions adopted in the annexation proceedings under GML
Article 17.

91.  The defendants treated Sterling Forest differently
from the above-listed similarly situated property owners in that
the Village Board refused to process and otherwise denied
Sterling Forest's requests for approval of plans to hook-in to
the Village's central water system in accordance with the terms
and provisions of WPCC Order, the Intermunicipal Agreement with
the Town and the provisions of the resolutions adopted in the
annexation proceedings under GML Article 17.

92.  The defendants' selective treatment of Sterling Forest
was intentional and the product of invidious discrimination
based on malicious bad-faith intent to injure Sterling Forest in
furtherance of the defendants' conspiracy to coerce Sterling
Forest into selling the Subject Property to the Village at an
artificially depressed price for use as a site for a new Village
Hall and Department of Public Works building.

93.  By reason of the foregoing, the defendants named herein did violate the plaintiff's right to Equal Protection as guaranteed by the Fifth Amendment and made applicable to the States by the Fourteenth Amendment.

94.  As a result of the said violation of the plaintiff's civil rights by defendants, the plaintiffs have suffered financial loss and other damages and/or will suffer financial loss and other damages in excess of FIVE MILLION DOLLARS ($5,000,000).

95.  Pursuant to 42 U.S.C. §1983 the plaintiff is entitled to recover damages from the defendants, jointly and severally, for the financial loss sustained by reason of their wrongful actions.

96.  By reason of the intentional and malicious actions of the defendants, the plaintiff also requests an award of punitive damages against the individual defendants in the amount of FIVE MILLION DOLLARS ($5,000,000).

### AS AND FOR A THIRD CAUSE OF ACTION
[Violation of Equal Protection - Class of One]

97.  Plaintiff repeats and realleges the allegations set forth in the paragraphs of this complaint numbered "1" through "96" as if fully set forth herein at length.

98. In the alternative to the Second Cause of Action herein, plaintiff asserts an equal protection claim under the "class of one" doctrine as articulated by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed. 1060 (2000).

99. As alleged in paragraphs "30," and "88" - "91" above, other property owners situated similarly to the plaintiff were intentionally treated differently from the plaintiff in the processing and approval of requests to hook-in to the Village's central water system.

100. As was alleged above, there is no rational basis for the difference in defendants' treatment of the plaintiff's request to hook-in to the Village's central water system.

101. By reason of the foregoing, under the Olech "class of one" doctrine, the defendants named herein did violate the plaintiff's right to Equal Protection as guaranteed by the Fifth Amendment and made applicable to the States by the Fourteenth Amendment.

102. As a result of the said violation of the plaintiff's civil rights by defendants, the plaintiffs have suffered financial loss and other damages and/or will suffer financial

loss and other damages in excess of FIVE MILLION DOLLARS ($5,000,000).

103. Pursuant to 42 U.S.C. §1983 the plaintiff is entitled to recover damages from the defendants, jointly and severally, for the financial loss sustained by reason of their wrongful actions.

104. By reason of the intentional and malicious actions of the defendants, the plaintiff also requests an award of punitive damages against the individual defendants in the amount of FIVE MILLION DOLLARS ($5,000,000).

### REQUEST FOR AWARD OF ATTORNEYS' FEES

105. Pursuant to 42 U.S.C. §1988, plaintiff seeks an award of counsel fees for each of the causes of action set forth above, in an amount to be determined by the Court.

### JURY TRIAL DEMAND

106. Plaintiff hereby demands a trial by jury with respect to each of the causes of action set forth above.

WHEREFORE, plaintiff, Sterling Forest, LLC, demands judgment on all causes of action above-listed in the amount Five Million Dollars ($5,000,000) against all defendants plus an award of punitive damages against the individual defendants and an award of counsel fees along with costs, disbursements and

SJG/                              01095.49608                          20960

such other and further relief as to the Court may seem just and
proper.

Dated:    April 18, 2007
          New Windsor, New York


                         DRAKE, LOEB, HELLER, KENNEDY, GOGERTY,
                            GABA & RODD, PLLC


          By:            _____
                         STEPHEN J. GABA, ESQ.
                         *Attorneys for Plaintiff,*
                         *STERLING FOREST, LLC,*
                         555 Hudson Valley Avenue, Suite 100
                         New Windsor, New York 12553
                         Tel. No. (845) 561-0550